CHAPLIN *v.* STATE OF INDIANA

[No. 27,565. Filed September 18, 1941. Rehearing denied October 15, 1941.]

56

*Walter J. Bixler,* of Peru, for appellant.

*George N. Beamer,* Attorney General, *James K. Northam,* Deputy Attorney General, *Norman E. Duke,* Deputy Attorney General, and *James L. Miller,* of Peru, for appellee.

ROLL, J.—Appellant was charged by affidavit with the crime of assault and battery with intent to commit a felony.

On February 21, 1941, appellant was arraigned and entered a plea of guilty to the charge. Judgment of guilty was entered and the punishment recorded as prescribed by the statute for the offense charged. § 10-401, Burns' 1933, § 2410, Baldwin's 1934, Acts 1927, ch. 203, § 2, p. 580.

On February 26, 1941, appellant filed a petition to withdraw his plea of guilty and to enter his plea of not guilty, and be given the opportunity to present his defense.

Appellee filed an answer in general denial, after which the court heard evidence and overruled appellant's application to withdraw plea of guilty.

Appellant filed his motion for a new trial which was also overruled by the court.

Appellant perfected this appeal, and assigns as error: (1) The overruling of his petition to withdraw his plea of guilty and enter a plea of not guilty; and, (2) overruling his motion for a new trial.

Appellee takes the position that appellant's motion for a new trial presents no question on appeal under the facts disclosed by the record. This position seems to be well supported by the decisions of this court. In the case of *Jackson* v. *State* (1903), 161 Ind. 36, 37, 67 N. E. 690, Judge Hadley speaking for the court said: "It is well settled in this State that a motion for a new trial is ineffectual in a case where judgment has been rendered upon a plea of guilty. The reasons are twofold: (1) Because there can be no new trial of a case where there has been no trial at all; and (2) a judgment upon a plea of guilty rests upon the same foundation as judgments in civil cases by default or confession. In either case the judgment must follow the confession or plea of guilty, and is conclusive until vacated by a withdrawal, or a setting aside of the plea of guilty or confession. *Meyers* v. *State*, 156 Ind. 388, and cases cited." *Orr* v. *State* (1928), 200 Ind. 27, 161 N. E. 269; *Bush* v. *State* (1920), 189 Ind. 467, 128 N. E. 443; *Gale* v. *State* (1930), 201 Ind. 532, 168 N. E. 241; *Kane* v. *State* (1929), 89 Ind. App. 608, 167 N. E. 540; *Capps* v. *State* (1928), 200 Ind. 4, 161 N. E. 6; *Carr* v. *State* (1924), 194 Ind. 162, 142 N. E. 378.

The only question therefore presented for our consideration, relates to the action of the court in denying appellant's motion to withdraw his plea of guilty.

Whether a defendant in a criminal case may withdraw a plea of guilty is a question committed to the

sound discretion of the trial court. In *Crooks* v. *State* (1938), 214 Ind. 505, 512, 15 N. E. (2d) 359, this court said: "And it has been decided by this court in many cases that an application for the withdrawal of a plea of guilty voluntarily made is addressed to the sound discretion of the trial court, and unless such discretion is abused the court on appeal will not interfere with its exercise. *Lamick* v. *State* (1925), 196 Ind. 71, 147 N. E. 139; *Farnsley* v. *State* (1925), 196 Ind. 722, 149 N. E. 436; *Nahas* v. *State* (1927), 199 Ind. 117, 155 N. E. 259."

In *Conover* v. *State* (1882), 86 Ind. 99, this court said: "The appellant's motion (to withdraw his plea of guilty) was addressed to the sound discretion of the criminal court, and, unless the record showed a very clear abuse of such discretion, this court would not be authorized, we think, to review or reverse the decision below on such motion." *Pattee* v. *State* (1887), 109 Ind. 545, 10 N. E. 421.

The substance of appellant's motion to withdraw his plea of guilty was, that at the time he entered his plea he was excited and under a great nervous strain, that he was unable to understand the procedure or the consequences of his act.

The record discloses that appellant was thirty-four years of age. He served five years as deputy clerk of Miami County. Afterwards he worked as a clerk in the auditor's office, and was then elected recorder of Miami County, which office he was holding at the time the affidavit herein was filed. He was a high school graduate and had taken some work in a business school, where he made excellent grades. It seems that appellant had become informed that a criminal charge was to be filed against him, and he voluntarily went to the police station to talk to Captain Chittam, whom he had known

from boyhood. At the police station he talked to Captain Chittam and to James L. Miller, the prosecuting attorney. It appears that appellant was accused of having immoral relations with a young boy and that he had been guilty of sodomy. They informed appellant that something had to be done, that this matter had been "brewing some time," and that an affidavit would be filed against him. Appellant's father came to the police station, and he, appellant, Captain Chittam and Mr. Miller talked over the matter and, either Mr. Miller or Captain Chittam said that it would be an awful rotten case, and that they didn't know what to do. Appellant and his father both asked Captain Chittam and Mr. Miller what to do. They told them that they could not advise them, that they were on the other side of the fence, and Mr. Miller explained to them why he could not advise them. He suggested that they see an attorney. At appellant's request, he called Mr. Harvey Cole, a highly reputable lawyer of Peru, and he came to the police station and talked with all the above named persons, and with appellant and his father privately. He stated to appellant and his father that, "I said this is a very terrible thing to have happen. The filing of the charges against you itself, so far as publicity and reputation were concerned accomplishes about as much in the way of damage to you as either a plea of guilty or a conviction." Mr. Cole said, "I did not, of course, advise any man to plead guilty to a charge of which he was innocent, but you have this to consider, that if prosecuting witnesses appear against you on this kind of a charge and testify that you were guilty of the acts of this sort with them, a court and jury are going to be very reluctant to believe they testified falsely, because there would be the filing of that charge and they wouldn't subject themselves to the notoriety and dis-

grace which would result from such a trial. If nothing of that sort had taken place, it would seem to me that unless you know all the facts other than I know about, which would enable you to prove your innocence, I think the chances would be very much against you in a trial."

Mr. Cole also stated to them, that "if he could get a suspended sentence on a plea of guilty, it might be better for him than to undergo a trial." It was also stated in appellant's presence and in the presence of appellant's father that what appellant needed was treatment, that cases of this sort presented a problem of one who needed treatment rather than incarceration, and that some humane method ought to be found to handle the situation.

After these conversations, the prosecuting attorney prepared an affidavit charging assault and battery with an intent to commit a felony. The felony was not described in the affidavit. The prosecuting attorney testified that he told appellant and his father that he would file this kind of an affidavit in order to spare appellant, prosecuting witness, and everybody connected with the trial as much embarrassment and publicity as possible.

Arrangement was made to have appellant appear in the court library late in the afternoon, just before court closed and at a time when as few people would be in the courtroom as possible. This was done at appellant's request. The prosecuting attorney at the police station had read the statute defining the crime of sodomy to appellant.

Appellant did come to the court library room. There he was arrested and brought before the court where the affidavit was read to him. Mr. Cole did not accompany appellant to the courtroom but appellant's father

was present. The judge asked appellant if he desired to be represented by counsel and he answered: "I said, well that I was depending upon—I talked to Harvey and he told me it might be best to plead guilty and get a suspended sentence if I could, so I was depending upon that."

From the above facts and others appearing in the record which we think unnecessary to set out, it is clear that appellant had talked the whole situation over with his father, who was connected with the city schools, and also with his attorney. There is no charge or contention that appellant was not fully informed of not only the charge which was actually filed against him, but also of the more serious crime which the prosecuting attorney and the police officer believed he had committed.

Appellant was a man of mature age and in mental capacity appeared far above the average person appearing in court charged with crime. He had the benefit of advice and counsel of both friends and attorney. It seems to us that the facts in this case fall far short of showing an abuse of discretion on the part of the trial court, in denying his motion to withdraw his plea of guilty. Under the rules of law as above stated, the judgment must be affirmed.

Judgment affirmed.

NOTE.—Reported in 36 N. E. (2d) 277.